UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

4:24−cv−07268-JD

| | |
|---|---|
| Carmen D. Collazo-Edwards, | Civil Action No.:_____ |
| Plaintiff, | |
| v. | COMPLAINT |
| TransUnion, LLC, | JURY TRIAL DEMANDED |
| Defendant. | |

## COMPLAINT

1. This is an action brought by Plaintiff, Carmen D. Collazo-Edwards, for actual, statutory and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq, (hereinafter "FCRA").

2. The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3. The FCRA likewise demands that consumers' disputes of inaccurate information be taken seriously by the consumer reporting agencies, requiring that they do much more than simply pass information between themselves and furnishers of information electronically without actually investigating the substance of a consumer's dispute and consider all information available in conducting such investigations.

4. Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec.

1

2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

5. To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681e(b) and 1681i, which are two of the cornerstone provisions of the FCRA.

6. One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

## JURISDICTION AND VENUE

7. This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681p, and 28 U.S.C. §1331 and §1332.

8. Venue is proper in the Florence Division because the Plaintiff resides in Florence County and the Defendant transacted business in this division.

## PARTIES

9. Plaintiff, Carmen D. Collazo-Edwards, is a resident and citizen of the State of South Carolina, Florence County, and is over the age of twenty-one (21) years. Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

10. Defendant TransUnion, LLC, ("TransUnion") is a limited liability company

registered to do business in South Carolina with the South Carolina Secretary of State. Defendant may be served with process through its registered agent for service of process, The Prentice-Hall Corporation System, Inc., 508 Meeting Street, West Columbia, South Carolina 29169. At all times and in all respects relevant herein, Defendant was doing business in the state of South Carolina and in this division.

11. Defendant TransUnion is a credit reporting agency ("CRA") as defined by the Fair Credit Reporting Act, 15 U.S.C. §1681a. Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

12. Defendant disburses such consumer reports to third parties under contract for monetary compensation.

13. Defendant's acts and omissions alleged herein are in violation of the Fair Credit Reporting Act which requires Defendant to provide a consumer with a complete copy of their credit file upon request, to follow reasonable procedures to assure maximum possible accuracy of the information concerning the Plaintiff's credit file, and which requires Defendant to conduct a reasonable reinvestigation of disputed information received from the Plaintiff.

14. The Plaintiff alleges that Defendant repeatedly failed to block, delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's TransUnion credit file, and failed to reinvestigate Plaintiff's disputes. Defendant also repeatedly disseminated Plaintiff's inaccurate credit file to third parties, causing Plaintiff to suffer damages as set forth herein.

## FACTUAL ALLEGATIONS

15. In or around May of 2017, Plaintiff discovered she had been the victim of identity theft. On May 24, 2017, Plaintiff filed a police report with the Florence County Sheriff's Office specifically stating her bank account and credit card accounts had been fraudulently used by an unknown person. Plaintiff also notified her bank and the credit card companies of the fraud.

16. In June of 2023, Plaintiff applied for a new apartment with Habitat 2000, LLC, but her request was denied. Plaintiff is on a fixed income and the apartment complex she applied to had larger apartments at a lower cost than what she currently pays in housing each month.

17. Thereafter, Plaintiff obtained a copy of her credit report and discovered that several accounts belonging to her that had been fraudulently taken over and used without her knowledge or permission were still reporting on her credit.

18. On or about October 13, 2023, Plaintiff sent a written dispute letter to TransUnion ("First Dispute"). In her letter, Plaintiff informed Defendant that she had been the victim of identity theft and fraud, and that she had been denied an apartment because of accounts reporting inaccurately on her credit. Plaintiff specifically disputed the reporting of four accounts: Bank of America, Account #*2306, JPMCB – Card Services, Account #0191, B&T, Account #6412, and BB&T, Account #4366. Plaintiff stated these four accounts were her accounts, but they had been fraudulently taken over and used without her permission. Plaintiff requested that all of these accounts be deleted from her credit report. Plaintiff included a copy of the police report she filed regarding the identity theft with her

dispute letter and asked that a fraud alert be added to her credit file. In addition, Plaintiff provided her full social security number, date of birth, and address.

19. On or about October 18, 2023, Defendant sent Plaintiff a letter stating it had received her identity theft block request but was declining to block the information Plaintiff had identified as fraudulent. Defendant also informed Plaintiff that it had opened a reinvestigation of this disputed information and that she would receive the results of Defendant's reinvestigation by mail.

20. On or about November 7, 2023, Defendant forwarded Plaintiff its Investigation Results, wherein Defendant informed Plaintiff two of the fraudulent accounts had been verified as accurate and two of the fraudulent accounts had been verified as accurate and updated. As a result, all four of the accounts continued to be reported on Plaintiff's TransUnion credit report.

21. On or about November 7, 2023, Defendant also forwarded Plaintiff a copy of her updated credit report which continued to include the four disputed accounts.

22. On or about January 31, 2024, Plaintiff sent a second written dispute letter to TransUnion ("Second Dispute"). In this letter, Plaintiff again told Defendant that she had been the victim of identity theft, and that, because fraudulent accounts were appearing on her credit report, she had been turned down for an apartment. Plaintiff disputed the Bank of America, JPMCB-Card Services, and two Truist Bank accounts reporting on her credit report as having been fraudulently taken over and used without her knowledge or permission, and requested they be deleted from her credit report. Plaintiff again included a copy of the police report she filed with her dispute letter.

23.     On or about February 10, 2024, Defendant sent to Plaintiff a letter on "Remedying the Effect of Identity Theft," stating "[a]s part of the fraud resolution process, [Plaintiff is] entitled to a copy of [her] rights under the Fair Credit Reporting Act, which is attached below."

24.     On that same day, Defendant sent Plaintiff a letter stating it had received her identity theft block request but again was declining to block the information Plaintiff had identified as fraudulent.  Defendant also informed Plaintiff that it had opened a reinvestigation of this disputed information and that she would receive the results of Defendant's reinvestigation by mail.

25.     On or about April 15, 2024, Plaintiff sent a third written dispute letter to TransUnion ("Third Dispute").  Plaintiff again informed Defendant she had been the victim of identity theft, that she was denied an apartment due to the fraudulent accounts appearing on her credit report, and that she disputed the Bank of America, JPMCB-Card Services, and two Truist Bank accounts reporting on her credit report as having been fraudulently taken over and used without her permission.  Plaintiff requested the fraudulent accounts be deleted from her credit report and included another copy of the police report she filed along with a copy of her driver's license.

26.     On or about April 23, 2024, Defendant sent Plaintiff a letter stating it had received her identity theft block request but again was declining to block the information Plaintiff had identified as fraudulent.  Defendant continued to claim that Plaintiff's identity theft block request had been made in error, was a misrepresentation of material fact and/or that she had obtained possession of goods, services, or money as a result of the transaction issue.

Absolutely none of those was correct. Defendant also informed Plaintiff that it had opened a reinvestigation of this disputed information and that she would receive the results of Defendant's reinvestigation by mail.

27. On or about May 9, 2024, Defendant sent Plaintiff its alleged Investigation Results stating that the JPMCB-Card Services Account had been verified as accurate and updated; that both Truist Accounts had been verified as accurate; and that the Bank of America account had been deleted. As a result, all three disputed accounts continued to be reported on Plaintiff's TransUnion credit report. Bank of America deleted its account from Plaintiff's TransUnion credit report.

28. On May 9, 2024, Defendant also provided Plaintiff an updated copy of her TransUnion credit report which continued to incorrectly report three of the fraudulently taken over accounts.

29. Despite Defendant's receipt of a police report from Plaintiff on three different occasions, Defendant repeatedly refused to block the fraudulent information from Plaintiff's TransUnion credit file.

30. To date, Defendant continues to incorrectly report multiple fraudulent accounts on Plaintiff's TransUnion credit file.

31. Defendant repeatedly failed to make a reasonable investigation into Plaintiff's disputes.

32. Upon receipt of the ACDV responses, Defendant simply accepted the furnishers' verifications of the Accounts and did not undertake to perform any investigation of its own.

33. For over 35 years, courts have recognized that a CRA cannot rely upon its data

furnishers exclusively, when the consumer disputes the accuracy of the furnishers' information. The CRA must make some independent investigation of its own. "Merely reporting whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the [consumer] and [furnisher]." *Swoager v. Credit Bureau of Greater St. Petersburg,* 608 F.Supp. 972 (M.D. Fla. 1985); *see also Bailey v. TransUnion Credit Info. Servs.,* 2016 U.S. Dist. LEXIS 196516, 2016 WL 11540113 (N.D. Ga. Nov. 28, 2016); *Crane v. TransUnion*, 282 F. Supp. 2d 311 (E.D. Pa. 2003)(explaining that a CRA must "go beyond the original source" to satisfy its duties to investigate).

34. Defendant's knowing and repeated violations of the FCRA warrants an award of punitive damages. *See, e.g., Younger v. Experian Info. Sols. Inc.,* Case No. 2:15-cv-00952-SGC, at *30 (N.D. Ala. Mar. 21, 2019) (awarding punitive damages for repeated, willful violations of the FCRA).

## COUNT ONE
(Fair Credit Reporting Act)

35. The Plaintiff adopts the averments and allegations of paragraphs 15 through 34 hereinbefore as if fully set forth herein.

36. Defendant maintains and distributes credit data files on the Plaintiff's credit. Defendant negligently failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the reinvestigation

requirements in 15 U.S.C. §1681i; and (c) failing to block the reporting of fraudulent information, as required by 15 U.S.C. §1681c-2(a).

37. Defendant repeatedly and negligently failed to conduct a reasonable reinvestigation of Plaintiff's disputes of the accounts fraudulently taken over and never provided Plaintiff with any investigation results.

38. Defendant repeatedly and negligently refused to block information reporting on Plaintiff's credit file despite receipt of a valid police report.

39. As a result of Defendant's negligent violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, denial of housing, loss of access to credit, anxiety, worry, fear, loss of sleep, family discord, headaches, loss of enjoyment of life, physical pain and sickness, frustration, humiliation, embarrassment, and mental anguish. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

40. In addition, the Plaintiff has incurred litigation expenses and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

41. Plaintiff is entitled to her attorneys' fees, pursuant to 15 U.S.C. §1681n(a).

## COUNT TWO
(Fair Credit Reporting Act)

42. The Plaintiff adopts the averments and allegations of paragraphs 15 through 41 hereinbefore as if fully set forth herein.

43. Defendant willfully failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow

reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i; and (c) failing to block the reporting of fraudulent information, as required by 15 U.S.C. §1681c-2(a).

44.     Defendant willfully failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

45.     Defendant willfully failed and/or refused to conduct a reasonable reinvestigation of Plaintiff's disputes of the accounts fraudulently taken over and never provided Plaintiff with any investigation results.

46.     Defendant willfully refused to block information reporting on Plaintiff's credit file despite receipt of a valid police report.

47.     Due to Defendant's willful failure to comply with the requirements of the Fair Credit Reporting Act, Plaintiff is entitled to statutory damages.

48.     As a result of Defendant's willful violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, denial of housing, loss of access to credit, anxiety, worry, fear, loss of sleep, family discord, headaches, loss of enjoyment of life, physical pain and sickness, frustration, humiliation, embarrassment, and mental anguish. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

49.     In addition, the Plaintiff has incurred litigation expenses, and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

50.     Further, Defendant's acts and omissions were willful and demonstrate a reckless

disregard for the Plaintiff's rights. Therefore, Defendant is liable to the Plaintiff for punitive damages in an amount to be determined by the jury.

51. Plaintiff is entitled to her attorneys' fees, pursuant to 15 U.S.C. §1681o(a)(2).

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A. Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B. Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C. Costs and reasonable attorney's fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and

D. For such other and further relief as the Court may deem just and proper

<i>/s/ Penny Hays Cauley</i><br>
Penny Hays Cauley, Fed. ID No. 10323<br>
Attorney for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
(843) 665-1718 Facsimile
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

<i>/s/ Penny Hays Cauley</i><br>
Of Counsel

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**
Trans Union, LLC
c/o The Prentice-Hall Corporation System, Inc.- Registered Agent
508 Meeting Street
West Columbia, SC 29169